UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ABBAS SHAH and ADAM BAUMAN,

                      *Plaintiffs*,

  -against-

FLAT RATE MOVERS LTD., FLAT RATE ELITE
SERVICES, INC., and ELITE MOVING, LLC,

                      *Defendants*.

------------------------------------------------------------------X

Civil Action No.: 1:20-cv-01204-LGS

**SECOND AMENDED COMPLAINT**

Plaintiffs, Abbas Shah and Adam Bauman ("Plaintiffs"), by and through their undersigned attorneys, as and for their Second Amended Complaint against defendants Flat Rate Movers Ltd. ("Flat Rate Movers"), Flat Rate Elite Services, Inc. ("Flat Rate Elite"), and Elite Moving, LLC ("Elite Moving"), (Flat Rate Movers, Flat Rate Elite, and Elite Moving, collectively, "Defendants" or "Flat Rate") allege as follows:

### NATURE OF ACTION

1.    Plaintiffs are former customer of Defendants, seeking to recover compensable damages caused by Defendants' violations of the 49 U.S.C. §14706 Carmack Amendment, The Racketeer Influenced and Corrupt Organization Act ("RICO") of 1979, The Lanham Act of 1946, and New York General Business Law §349.

2.    Plaintiffs entered into a contract with Defendants ("the Agreement") with the understanding that Plaintiffs' property was going to be transported and handled according to Defendants' advertising, both online and in-person, in transit from Plaintiffs' original residence in Manhattan, New York to the storage facility in Newark, New Jersey, and again ten months later from that same storage facility to Plaintiffs' new residence in Manhattan, New York.

Page 1 of 11

3. Defendants falsely advertised the level of care expected to be provided to Plaintiffs' property, and Plaintiffs consequently suffered significant monetary damages from mishandling of their properties.

## JURISDICTION AND VENUE

4. The claims asserted herein arise under and pursuant to 49 U.S.C. § 14706, otherwise known as the Carmack Amendment; 18 U.S.C.A § 1961 of The Racketeer Influenced and Corrupt Organization Act, alleging Defendants have participated in racketeering as defined in 18 U.S.C.A. § 659; 15 U.S.C.A. § 1125 of The Lanham Act; and under New York General Business Law §§ 349 and 350.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965. The contract at issue was executed by Plaintiffs and Defendants in this District, Defendants transact business in this district, and a significant portion of Defendants' actions, and the subsequent damages, took place in this District.

7. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, interstate roadways between New York and New Jersey to transport Plaintiffs' property from New York to the warehouse in New Jersey

## PARTIES

8. Plaintiffs Abbas Shah and Adam Bauman are citizens and residents of New York County located in New York State.

9. Upon information and belief, Defendant Flat Rate is an active domestic corporation formed under the laws of the State of New York and maintains a principle place of business at 27 Bruckner Boulevard 2nd Floor, Bronx, New York 10454.  Flat Rate acts through, and/or on behalf of other affiliates including co-Defendants Flat Rate Elite and Elite Moving.

10. Upon information and belief, Defendant Flat Rate Elite is an active domestic corporation formed under the laws of the State of New York and maintains a principle place of business at 27 Bruckner Boulevard, Bronx, New York 10454.  Flat Rate Elite acts through, and/or on behalf of other affiliates including co-Defendants Flat Rate Movers and Elite Moving.

11. Upon information and belief, Defendant Elite Moving is a limited liability company formed under the laws of the State of New York and maintains a principle place of business at 27 Bruckner Boulevard 2nd Floor, Bronx, New York 10454.  Elite Moving acts through, and/or on behalf of other affiliates including co-Defendants Flat Rate Movers and Flat Rate Elite.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A. Initial Contact and Agreement Between Plaintiffs and Defendants**

12. In September 2018, Flat Rate marketed itself to Plaintiffs via their website.

13. On Defendants' website, Flat Rate markets itself as "unparalleled luxury moving teams that deliver the ultimate experience," through quality care of luxury goods.

14. This website advertised that the, "highest quality blankets"; bubble wrap; "dust covers"; "custom wood crating built by skilled carpenters"; and "climate-controlled trucks keep your valuables in perfect condition".

15. On or about September 19, 2018, Plaintiffs submitted an online application via Flat Rate's website, and received a reply from an employee, Mr. Laurence Yates ("Yates"), who scheduled to come visit Plaintiffs' residence on September 20, 2018 to conduct a free inventory estimate. During this estimate, Yates suggested Flat Rate's "Elite" level moving plan.

16. On or about September 20, 2018, Plaintiffs contacted Defendant inquiring about moving property from an apartment in Manhattan, New York to a storage facility owned and operated by Flat Rate Elite at 99 Evergreen Avenue, Newark, New Jersey 07114.

17. The property at-hand included a marble dining room table purchased for Fifty-One Thousand, Six Hundred Dollars ($51,600.00); a living room sofa purchased for Twenty-Three Thousand, Five Hundred Fifty Dollars ($23,550.00); a designer cabinet purchased for Forty-One Thousand Dollars ($41,000.00); and high-end wardrobe items.

18. In total, the property to be moved was believed by Plaintiffs to be worth at least Six Hundred Twenty-Five Thousand Dollars ($625,000.00) as of September 2018.

19. Yates stated that under the Elite level moving plan, all high-value furnishings would be fully protected.

20. This Elite level moving plan costs Plaintiffs Four Thousand, Seven Hundred Eighty Dollars ($4,780.00), to be paid up-front, and Plaintiffs' move was assigned Move ID: #957702.

21. There was no discussion or suggestion by Yates to Plaintiffs of any additional insurance coverage on Plaintiffs' property.

22. Based on Yates' assurances to Plaintiffs, Plaintiffs believed the security and care to be given to Plaintiffs' property would be diligent and adequate enough to ensure the safety and condition of the property being moved.

B. **Transportation from Manhattan New York to Newark New Jersey**

23. On September 29, 2018, employees of Flat Rate arrived at Plaintiff's apartment located at 205 East 92nd Street, Apt. 37A, New York, New York 10128 ("the Apartment"). The employees inspected the items to be moved, and all high-value items were then in excellent condition.

24. These employees then took the items from the Apartment and transported them to 99 Evergreen Avenue, Newark, New Jersey 07114 ("the Storage Unit").

25. Yates had previously explained to Plaintiffs that in exchange for the monthly cost of the storage unit, Plaintiffs will receive [1] a climate-controlled and sealed storage environment and [2] all delicate and expensive household furnishings and similar items would be well-wrapped and insulated by protective blankets and plastic wrapping to prevent damage during storage and subsequent transit after storage.

26. Plaintiffs property remained at the Storage Unit from September 29, 2018 through July 5, 2019.

C. **Transportation from Newark, New Jersey to Plaintiff's New Apartment in Manhattan, New York**

27. On or about June 25, 2019, Plaintiffs contacted Yates to arrange for another "Elite" moving process from Flat Rate from the Storage Unit to Plaintiffs' new apartment located at 165 Charles Street, Unit #20, New York, New York 10014 ("the New Apartment").

28. On June 25, 2019, Yates sent a confirmation email in which he explained all of Plaintiffs' property was to be loaded onto the moving truck the night of June 4, 2019 to ensure a 9:00-10:00 AM arrival time on July 5, 2019 at the New Apartment.

29. However, on July 5, 2019, Plaintiffs and Flat Rate's employees were surprised to see that approximately one-half of Plaintiffs' property was not loaded on the truck and were

presumably still at the Storage Unit. Included in the absent property were a living room couch, mattress, and a rare marble tabletop and coffee table.

30. Plaintiffs contacted Yates and a dispatch center worker, Anthony, who informed Plaintiffs that their missing property was in fact still at the Storage Unit was being prepared to be moved to the New Apartment and was set to arrive at 6:00 PM on July 5, 2019.

31. Upon arrival of the second shipment of property, the two foremen present were severely understaffed to move the property into the New Apartment, leaving Plaintiffs with no other choice but to assist in the moving process.

32. Plaintiffs soon realized their Fifty-One Thousand, Six Hundred Dollar ($51,600.00) marble dining room table was shattered. The shattered marble was contained by only a wooden box, no plastic wrapping or blankets as advertised on Flat Rate's website.

33. Moreover, through observation after receiving their property, Plaintiffs became aware of mildew and dust on their property, specifically on their wardrobe pieces.

34. Plaintiffs obtained a written statement from one of the foremen acknowledging the marble was stored without any proper padding or wrapping of any kind and emailed Yates conveying their dismay at the state of their wardrobe, marble, and property that was stored under the care of Yates' employer.

35. Plaintiffs filed a claim form online for their damaged property, assessing a Six Hundred Twenty Five Thousand Dollar loss ($625,000), and received a mere Six Hundred Dollar ($600) compensation plus a Four Hundred Dollar ($400) refund for the cash tip that Plaintiff's paid to Defendant's foreman during the first shipment of property on July 5, 2019. Plaintiffs' reimbursement totaled at One Thousand Dollars ($1,000).

36. Plaintiffs rejected this settlement offer as it is blatantly inadequate for the amount of damage incurred from choosing to use Defendants services.

## CAUSES OF ACTION
## AS AND FOR A FIRST CAUSE OF ACTION

### (Violation of the Carmack Amendment 49 U.S.C. § 14706)

37. Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 36 herein as though fully set forth herein.

38. According to 49 U.S.C.A. § 11706, to make a *prima facie* case to recover damages under the Carmack Amendment, the shipper must show, "[1] delivery in good condition, [2] arrival in damaged condition, and [3] the amount of damages."

39. Plaintiffs' property was in excellent condition at the time of the initial move from the Apartment to the Storage Unit on September 29, 2018.

40. Sometime within the period between the final assessment of the property on September 29, 2018 and reception of the property on July 5, 2019, Plaintiffs' property was damaged.

41. At this time and pursuant to the Agreement, the property was under the care of Defendants, all associates of each other in the moving industry, and located at the same principal place of business.

42. Therefore, while under the care of Defendants, Plaintiffs' property was destroyed and damaged, in an amount to be determined at trial.

## **AS AND FOR A SECOND CAUSE OF ACTION**

### (Violation of 18 U.S.C.A. §§ 1961 and 1962 as well as 18 U.S.C.A. § 659 Relating to The Racketeer Influenced and Corrupt Organization Act)

43. Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 42 herein as though fully set forth herein.

44. In order to make out a violation of 18 U.S.C. § 1962(c), Plaintiffs must prove that, "(1) an enterprise existed; (2) the enterprise participated in or its activities affected interstate commerce; (3) the defendant was employed by or was associated with the enterprise; (5) through a pattern of racketeering activity." *United States v. Shifman*, 124 F.3d 31, 35 (1st Cir. 1997).

45. Here, Flat Rate existed and transported property between New York and New Jersey.

46. Flat Rate's employees who physically moved Plaintiffs' property were associated with or employed by Flat Rate.

47. "Racketeering activity" is defined as any act relating to theft from interstate shipment as defined by 18 U.S.C.A. § 1961(1).

48. Here, Plaintiffs allege that some pieces of property were missing upon receival on July 5, 2019.

49. These items included Dior and Hermes handbags, worth over Fifteen Thousand Dollars ($15,000) and fifteen Dyptique candles.

50. Defendants have violated 18 U.S.C.A. § 1962 relating to the Racketeer Influenced and Corrupt Organization Act, resulting in damages incurred by Plaintiffs, in an amount to be determined at trial.

## **AS AND FOR A THIRD CAUSE OF ACTION**

### **(Violation of 15 U.S.C.A. § 1125 of The Lanham Act)**

51. Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 50 herein as though fully set forth herein.

52. Under 15 U.S.C.A. § 1125(a)(1)(B), Plaintiffs must show: (1) economic or reputational injury flowing directly from the deception wrought by the defendant[s]'s advertising; and (2) and that such injury occurs when the deception of consumers causes defendants to withhold trade from the plaintiff.

53. Here, Defendants made significant misrepresentations about the level of their services provided to "Elite" package customers.

54. Plaintiffs elected and paid for the "Elite" package.

55. On Flat Rate's website, it states that property was to be padded and wrapped in plastic and/or blankets and secured in a climate-controlled storage facility.

56. This representation was false to Plaintiffs, as their property was given a lower standard of care, and no care close to this caliber of alleged quality was given to their property.

57. This lower standard of care resulting from deceitful advertising on behalf of Flat Rate, and caused Plaintiffs' property destruction.

58. This violation of section 1125 of the Lanham Act resulted in significant damages incurred by Plaintiffs, in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION

## (Violation of New York General Business Law §§ 349 and 350)

59. Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 58 herein as though fully set forth herein.

60. Under New York General Business Law § 349(a), Plaintiffs must show that Flat Rate was engaging in practices that were deceptive or misleading in a material way and that Plaintiffs have been injured by reason thereof.

61. Here, Flat Rate falsely advertised the level of security and care going to be given to Plaintiffs' property under the "Elite" moving package, which mislead Plaintiffs to believe their property was in safe care.

62. Flat Rate advertised that property was to be padded and wrapped in plastic and/or blankets and secured in a climate-controlled storage facility.

63. In reality, Plaintiffs' property was not properly padded and insulated, resulting in their marble tabletop shattering and their wardrobe becoming covered in dust and mildew.

64. This violation of New York's General Business Law's false advertisement claims resulted in significant monetary damages to Plaintiffs, to be determined at trial.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court:

(i): On their First Cause of Action against Defendants for violation of 49 U.S.C. §14706, otherwise known as the Carmack Amendment, award Plaintiffs monetary damages in an amount to be determined at trial, together with punitive damages;

(ii): On their Second Cause of Action against Defendants for violation of 18 U.S.C.A. §§ 1961, 1962, as well as 18 U.S.C.A. § 659 Relating to The Racketeer Influenced and Corrupt

Organization Act, award Plaintiffs monetary damages in an amount to be determined at trial, together with punitive damages;

(iii): On their Third Cause of Action against Defendants for violation of The Lanham Act, award Plaintiffs monetary damages in an amount to be determined at trial, together with punitive damages;

(iv): On their Fourth Cause of Action against Defendants for violation of sections 349 and 350 of New York's General Business Law, award Plaintiffs monetary damages in an amount to be determined at trial, together with punitive damages;

(v): Award Plaintiffs their reasonable attorneys' fees, costs, and interest; and

(iv): Award Plaintiff such other and further relief as this Court may deem just and proper.

Dated: New York, NY
   June 29, 2020

Respectfully submitted,

MCLOUGHLIN, O'HARA, WAGNER & KENDALL, LLP

*s/ Daniel M. O'Hara*

By: _____
Daniel M. O'Hara, Esq.
250 Park Avenue, 7th Floor
New York, NY 10177
T: (212) 867-8285
F: (917) 382-3934
E: dohara@mowklaw.com

*Attorney for Plaintiff*